# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOY LEON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:16-cv-00361-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION<br><br>(ECF No. 16, 21) |

## I.

## INTRODUCTION

Plaintiff Joy Leon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from incontinence, pelvic and vaginal pain disorder, with history of surgeries; and obesity. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted in part and denied in part.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 10, 23.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on February 27, 2012. (AR 81, 90.)  Plaintiff's applications were initially denied on July 18, 2012, and denied upon reconsideration on December 31, 2012.  (AR 127-130, 136-140.)  Plaintiff requested and received a hearing before Administrative Law Judge Catherine R. Lazuran ("the ALJ").  Plaintiff appeared for a hearing on January 16, 2014.  (AR 45-80.)  On March 28, 2014, the ALJ found that Plaintiff was not disabled.  (AR 17-28.)  The Appeals Council denied Plaintiff's request for review on August 11, 2015.  (AR 3-5.)

### A.      Hearing Testimony

Plaintiff testified at the January 16, 2014 hearing.  (AR 49-67, 68-69, 76-77.)  Plaintiff was born on February 18, 1977, and was 36 years old on the date of the hearing.  (AR 49.)  Plaintiff was 5 feet tall and weighed 183 pounds.  (AR 49.)  Plaintiff is right handed.  (AR 49.)

Plaintiff is married and her husband does not work.  (AR 49.)  He got fired when he had to stay home and take care of their son when Plaintiff had surgery.  (AR 67.)  Plaintiff lives with her six children ages 17, 15, 13, 10, 9, and 7.  (AR 49-50.)

Two of Plaintiff's children receive disability benefits and she receives welfare and food stamps.  (AR 56.)  Plaintiff's son is mentally and physically disabled and her daughter has ADHD with behavioral modifications.  (AR 56.)  Plaintiff's 15 year old son has "septal optic dysplasia; a lobar hallo prolosepheli (PHONETIC) with spastic CP; and diabetes insipidus and hyperpituitarism" and is unable to walk or talk.  (AR 51, 56, 67.)

Plaintiff has a driver's license.  (AR 50.)  Plaintiff graduated from high school and attended nine months of vocational training.  (AR 50.)  Plaintiff's training was as a medical office specialist and she finished in 2007.  (AR 51.)  Plaintiff's husband spends time with her son and before he was off work her 17 year old son spent time with him.  (AR 67.)  Her 17 year old son has been on independent studies for two years.  (AR 67.)

Plaintiff is currently working as in-home supportive services caring for her disabled son

three hours per day seven days a week. (AR 51.) She makes about $900.00 per month. (AR 52.) Plaintiff lifts about five pounds. (AR 51.) She prepares her sons' meals, which are mostly microwavable meals, washes his face, makes his bed, and gives him sponge baths. (AR 51.) She has been caring for him in this capacity since 1996. (AR 51.) Previously she was paid for fewer hours per month. (AR 52.)

In 2009, Plaintiff worked for Kaiser Permanente as an eligibility clerk through a temp agency. (AR 52, 55.) She was working 40 hours per week. (AR 52.) In that position, she would lift files. (AR 2.) The position was the same as a secretary. (AR 68.) Plaintiff would answer phones, input data into the computer, file, and talk to clients on the phone. (AR 68-69.) She left when she started to get ill, when she had her hysterectomy. (AR 52.) She did not get a permanent job before she left. (AR 55.)

Plaintiff worked as a ticket and ramp agent for Continental Airlines. (AR 52.) As a ticket agent, Plaintiff would check passengers in through the computer system, tag their bags, put them on the belt and send them to the baggage room. (AR 69.) Plaintiff would lift 70 pound bags onto the tarmac, putting them into and out of the plane, flag planes in, and check in passengers. (AR 52.) She worked for three different airlines over a period of ten years from 1998 to 2008. (AR 52-53.) The jobs were all fulltime and she performed similar duties at each job. (AR 53.) Plaintiff left the last job because it was getting hard for her to lift the bags in and out of the airplanes and she wanted a better education so she went to work for a department store for a year while she went back to school. (AR 53.)

In the department store, Plaintiff worked in the cash office keeping track of all the money and accounting. (AR 53.) She worked forty hours per week in this job. (AR 54.) She was a cash office attendant. (AR 53.) Plaintiff left after she finished school to go to an externship. (AR 54.) In 2009, Plaintiff worked at Mercy Hospital as an environmental specialist, which entailed cleaning the hospital rooms. (AR 54.) Plaintiff was working 32 to 40 hours a week and lifting about 40 pounds. (AR 54.)

Plaintiff left Mercy Hospital because she was offered a better paying job as a security guard. (AR 54.) Plaintiff worked full time as a security guard at the airport for about six

months.  (AR 54-55.)  In this position she lifted the passenger's suitcases, which were about 70 pounds, onto the belt to scan them.  (AR 55.)

Plaintiff has had surgery since 2012 but does not remember when.  (AR 57.)  Plaintiff was hospitalized for one night in July 2012, and August 2012.  (AR 57-58.)  Plaintiff is currently receiving pain management treatment from Dr. Parmer.  (AR 58.)  Dr. Parmer prescribed medication and wants Plaintiff to go to physical therapy.  (AR 58.)  Plaintiff is going to have another MRI of her back.  (AR 58.)  Plaintiff was going to have another surgery on Thursday to lift her rectum and she will be in the hospital three to four days.  (AR 58.)

Plaintiff was referred to pain management back in 2012 but did not go because her insurance would not pay for it.  (AR 59.)  Plaintiff has been able to carry five to ten pounds since February 2012.  (AR 59.)  Plaintiff gets about four hours of sleep per night.  (AR 59.)  When she goes to sleep she wakes up because of the pain.  (AR 59.)  Plaintiff will get a heating pad or take more medication if it is time.  (AR 59.)  Plaintiff uses laxatives but they do not really help, they just make her stool softer.  (AR 59.)  Plaintiff's pain is 9 out of 10 on an average day.  (AR 59.)

Plaintiff is currently unable to work because she cannot stand or sit for long periods of time and has to rest quite frequently.  (AR 56.)  When Plaintiff is in too much pain she has to lie down.  (AR 56.)  She became unable to work about three years prior to the hearing.  (AR 56.)  Her health has gotten worse since then.  (AR 56.)  Plaintiff takes Percocet, Celebrex, gabapentin, nortriptyline and a fentanyl patch.  (AR 57.)  The medications put her to sleep.  (AR 57.)  She told her doctor and he told her she needed to rest.  (AR 57.)

Plaintiff rests as much as she can during the day and tries not to do anything unless she has to.  (AR 60.)  But she is the primary caretaker for her son and takes care of him.  (AR 60.)  Plaintiff has not received any counseling or psychological treatment since 2012.  (AR 60.)  Plaintiff does not do any household chores.  (AR 60.)  Her husband and children do them or her mother comes over and helps.  (AR 60.)  Plaintiff only cooks for her disabled son; her husband does the rest of the cooking.  (AR 60.)  Plaintiff's husband does all the grocery shopping because it is too painful for her to walk around the store.  (AR 60-61.)  Plaintiff does not shop for clothing, exercise, go to church, or travel.  (AR 61.)  She did go to USC for medical treatment

twice in 2013. (AR 61.) Her sister drove her there. (AR 61.)

Plaintiff has no hobbies. (AR 62.) Plaintiff plays games on her iPad in the middle of the night when she is in pain and cannot sleep. (AR 62.) Plaintiff does not use e-mail, go to movies, read, use public transport, or do laundry. (AR 62.) Plaintiff does drive, but very seldom. (AR 62.) Plaintiff has two dogs but it is her sons' job to take care of them. (AR 62.) Plaintiff does not help her children with their homework, the older children help the younger children or her husband helps them. (AR 62.)

Plaintiff went to her son's award ceremony at school but had to leave because she was in too much pain. (AR 62-63.) Plaintiff does not pay the bills or help her children get ready for school in the morning. (AR 63.) Plaintiff cannot do any of her past work because she cannot stand or sit for long periods of time and has to have periods of rest due to pain. (AR 63-64.) Plaintiff has to go to the bathroom 12 to 13 times a day. (AR 64-65.) Plaintiff only has 30 seconds to one minute notice before she has to go to the bathroom. (AR 65.) Plaintiff wears a pad and has had accidents in public. (AR 65.) The last time that happened was about three months ago at Dr. Park's office. (AR 65.) When Plaintiff has to go somewhere she uses a pad and then does not drink anything so she will not have to go the bathroom while she is out. (AR 65.)

Plaintiff is able to sit for 10 to 15 minutes before she has to move or stand up to alleviate the pain. (AR 65.) Plaintiff lays down 4 to 6 hours per day. (AR 66.) During the middle of the night, Plaintiff is able to focus on her video games for about thirty minutes. (AR 66.) Plaintiff spends thirty minutes in the morning taking care of her son. (AR 66.) Then she will spend an hour preparing his meal. (AR 66.) She stands to microwave his food and then can sit while she feeds him. (AR 66.) Then she uses the remaining hour and one half to get him ready for bed. (AR 66.)

A vocational expert ("VE"), Robin Scher, also testified at the hearing. (AR 68-80.) The VE characterized Plaintiff's past work history as a guard, security, Dictionary of Occupational Titles ("DOT") 372.667-034, customarily performed as light with an SVP: 3 however, performed as heavy; home attendant, DOT 354.377-014, customarily performed as medium with an SVP: 3,

however performed as light; eligibility worker, DOT 195.267-010, sedentary strength level with an SVP: 6; ticket agent, DOT 238.367-026, customarily light with an SVP: 5, however performed at heavy; administrative clerk, DOT 219.362-010, light SVP: 4; and hospital cleaner, DOT 323.687-010, medium with an SVP: 2. (AR 69-70.) Plaintiff has transferrable job skills. (AR 70.)

The ALJ presented a hypothetical of an individual of Plaintiff's age, education, and past work experience, who is able to lift 50 pounds occasionally and 25 pounds frequently; can stand and walk 6 of 8 hours; and sit 6 of 8 hours. (AR 71.) The VE opined that this individual would be able to perform all jobs Plaintiff previously performed as they are customarily performed. (AR 71.)

The ALJ presented a second hypothetical of this same individual who is able to lift 20 pounds occasionally and 10 pounds frequently; can stand and walk 6 of 8 hours and sit 6 of 8 hours; and can occasionally bend, squat, climb, crawl and reach above the shoulder; should avoid exposure to hazards such as moving machinery and avoid moderate exposure to dust, fumes, gases, poor ventilation and is able to occasionally drive. (AR 71.) The VE opined that this individual would be able to perform Plaintiff's past relevant work as a security guard as it is customarily performed, the home attendant as performed by Plaintiff, the ticket agent as it is customarily performed, and the administrative clerk. (AR 72.)

The ALJ then added that the individual needs a sit or stand option and can do each for 15 to 30 minutes at a time. (AR 72.) The VE opined that this individual would be able to work as a security guard, eligibility worker and administrative clerk. (AR 72-73.) The security guard position would need to be eroded by 50 to 60 percent to account for the inability to stand; there are approximately 43,000 jobs in California and 330,000 nationally. (AR 73-74.) If there was an addition of avoiding moderate exposure to extreme temperatures, it would not affect the jobs available in California. (AR 74.)

Counsel proffered a hypothetical of the same person in the second hypothetical who was likely to miss four days in a typical month. (AR 74.) The VE opined that this individual would be able to perform Plaintiff's past relevant work but if they consistently missed four days a

month they would not be able to maintain a job.  (AR 74-75.)

Counsel proffered a second hypothetical of this same individual who would have to take restroom breaks which would remove her from the workstation for eight minutes every hour apart from normal breaks.  (AR 75.)  The ALJ objected that there was no evidence that Plaintiff needed eight minutes to take a restroom break.  (AR 75.)  The VE opined that it is required that someone who needs to be allowed to use the restroom be able to do so.  (AR 75.)  Especially in the office position, however, eight minutes seems like an excessive amount of time to urinate. (AR 75-76.)  Counsel objected to the VE's opinion on the length of the restroom break.  (AR 76.)  Plaintiff clarified that if she is up from 4:00 a.m. to 6:00 p.m. she would go to the bathroom 12 to 13 times.  (AR 77.)  She gets her son ready for bed at 5:00 p.m. and then she is laid up due to pain by 6:00 p.m.  (AR 77.)  It takes Plaintiff two to three minutes to go to the bathroom.  (AR 77.)

The ALJ asked if an individual needed a restroom break once every 60 to 90 minutes, for 2 to 3 minutes, if that would be a problem in the workplace.  (AR 78.)  The VE opined that it would not be a problem, especially in the office situation.  (AR 78.)  This individual would be able to work as an office helper, DOT 239.57-010, light with an SVP: 2, there are approximately 8,200 jobs in California and 75,000 nationally.  (AR 78-79.)

Counsel asked if there would be any erosion for the sit stand option and the VE opined there would not be.  (AR 79.)  Counsel then inquired how the regulations define light.  (AR 79.) The VE responded that if a person might need to stand more than two hours in an eight hour day the job would be classified as light.  (AR 79.)  There is quite a range within the categories and a person may not have to do any lifting at all.  (AR 79.)  Counsel then inquired as to whether all 95,000 jobs would allow for a sit stand option.  (AR 80.)  The VE opined that the jobs are generally in an office and an individual would be able to have a stool.  (AR 80.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff met the insured status requirements of the Social Security Act through September 30, 2013.

- Plaintiff has not engaged in substantial gainful activity since February 21, 2012, the alleged onset date.

- Plaintiff has the following severe impairments: pelvic and vaginal pain disorder, with history of surgeries; and obesity.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift 10 pounds frequently and 20 pounds occasionally; stand and walk in increments of 15 minutes and for a total of 4 hours out of an 8-hour workday; sit in increments of 15 to 30 minutes and for a total of 4 hours out of an 8-hour workday; and can do occasional bending, squatting, climbing, crawling and reaching above shoulder height. She should avoid moderate exposure to workplace hazards, and unprotected heights and to marked changes in temperature; and can do no more than occasional driving.

- Plaintiff is capable of performing past relevant work as a security guard; office helper and copy machine operator. This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from February 21, 2012, through the date of this decision.

(AR 22-27.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. §

404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not

1  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

2  for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

3  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

4  upheld.").

5  **IV.**

6  **DISCUSSION AND ANALYSIS**

7  Plaintiff contends that the ALJ erred in the weight given to her treating physicians'

8  opinions and in evaluating her subjective complaints of pain; and that the step four finding is not

9  supported by substantial evidence.  Defendant counters that the ALJ properly evaluated the

10  medical evidence and provided legally sufficient reasons for the weight afforded to the treating

11  physician opinions; correctly evaluated Plaintiff's subjective complaints of pain and provided

12  specific and valid reasons to determine that her complaints were not credible, and substantial

13  evidence supports the step four and five determinations.

14  **A.      Plaintiff Credibility**

15  Plaintiff contends that the ALJ erred in finding that her complaints of pain were not fully

16  credible.  "An ALJ is not required to believe every allegation of disabling pain or other non-

17  exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation

18  and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or

19  symptoms is credible, requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674

20  F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented

21  objective medical evidence of an underlying impairment which could reasonably be expected to

22  produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th

23  Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to

24  show that her impairment could be expected to cause the severity of the symptoms that are

25  alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80

26  F.3d at 1282.

27  Second, if the first test is met and there is no evidence of malingering, the ALJ can only

28  reject the claimant's testimony regarding the severity of her symptoms by offering "clear and

convincing reasons" for the adverse credibility finding. <u>Carmickle v. Commissioner of Social Security</u>, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. <u>Lingenfelter</u>, at 1040; <u>Thomas</u>, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting <u>Smolen</u>, 80 F.3d at 1284).

In this instance, the ALJ found that Plaintiff's impairments could be reasonably expected to cause some of the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects were not entirely credible. (AR 24.) The ALJ cited several reasons to discredit Plaintiff's testimony. Therefore, the Court shall address the reasons stated to determine if the ALJ provided clear and convincing reasons to find Plaintiff's testimony not credible.

1. Inconsistency With Medical Record

The ALJ found that Plaintiff's medical record does not show significant abnormal findings on examination or on diagnostic workup that would be expected from one with the severe pain that Plaintiff alleges. (AR 25.) Plaintiff argues that the ALJ lacked the expertise to determine what findings were to be expected to account for Plaintiff's pain.

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony.  Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999).  The ALJ properly considered this evidence in weighing Plaintiff's credibility. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

While the record does record findings of tenderness upon examination (AR 257, 269, 270, 275, 280, 283, 305, 311, 312, 316, 321, 333, 383, 387, 389, 390, 406), the record also shows no or normal findings despite Plaintiff's complaints of severe pain (AR 270, 271, 275, 276, 280, 282, 304, 306, 310, 365, 372, 381, 388, 390).  There are a few findings of more intense pain.  On July 29, 2013; and August 19, 2013; Dr. Israel examined Plaintiff and on examination of the vagina noted "exquisitely tender anteriorly."  (AR 321, 406.)  Further, Plaintiff has had multiple surgeries, mainly due to removal of mesh and adhesions following her initial surgery.  (AR 253, 259, 307-308, 314, 318, 327-328.)  Most of these were outpatient surgeries, while on two occasions Plaintiff was kept overnight due to pain and nausea.  (AR 259, 313.)

On April 26, 2012, Dr. Chowdhury did a colonoscopy with a biopsy.  (AR 288-290.) Findings were internal hemorrhoids, few hyper pigmented patches in recto sigmoid, suspect prominent lymphoid follicle, status post biopsy.  (AR 288.)  Plaintiff's constipation was most likely related to pain medications.  (AR 288.)  The pathology report showed

A. Sigmoid colon biopsy:
  -Focal active colitis with lymphoid aggregation.
  -No granuloma, ulceration or ischemic change .
  -No increase of intracpithaelial lymphocytes or thickening of subepithelial collagen.
  -No evidence of microscopic colitis, collagenous colitis or inflammatory bowel disease.
  -Melanosis coli present.
  -No dysplasia.
B. Rectosigmoid colon biopsy:
  -Mild chronic colitis with lymphoid aggregation.
  -No active inflammation, granuloma, ulceration or ischemic change.
  -No increase of intraepithelial lymphocytes or thickening of subcpithelial collagen.
  -No evidence of microscopic colitis, collagenous colitis or inflammatory bowel

disease.
-Melanosis coli present.
-No dysplasia.

(AR 290.) Dr. Chowdhury noted on October 26, 2012, that an upper endoscopy performed on October 10, 2012 showed superficial gastric ulcers and some gastritis, H. pylori was positive. (AR 304.)

Plaintiff had a normal CT scan on February 10, 2013, during an emergency room visit for abdominal pain. (AR 394.) Plaintiff had an x-ray of her abdomen on February 28, 2013. The examination found foreign body noted hepatic flexure and constipation. (AR 393.) A CT scan of Plaintiff's abdomen was negative on April 9, 2013. (AR 333, 337-338.) Dr. Burson noted on June 12, 2013 that a CT scanned showed no evidence of appendicitis and there were no inflammatory changes noted in the right lower quadrant. (AR 324.) There was 2 mm nonobstructing renal calculi in the left, but Plaintiff was not complaining of pain in that area. (AR 324.) Plaintiff's MRI of the pelvis was normal. (AR 448-449.)

A September 13, 2013 MRI of Plaintiff's abdomen revealed 1) no evidence of ventral hernia; 2) multiple gallstones; 3) small hiatal hernia; and 4) otherwise, negative MRI scan of the abdomen. (AR 404.) A September 23, 2013, MRI of Plaintiff's pelvis showed 1) postoperative changes with no recurrent ventral hernia; 2) the rectum appeared to be displaced below the pelvic floor possibly representing a rectocele; 3) possible small right ovarian cyst; and 4) otherwise negative MRI scan of the pelvis. (AR 403.) Plaintiff had a CT of her abdomen on October 3, 2013 which showed no CT evidence for appendicitis. (AR 401.) However, the appendix was not confidently identified, there were no inflammatory changes in right, but the lower quadrant had a 1-2 mm nonobstructing renal calculi, 2 identified in the left kidney. (AR 401.) Plaintiff had a diffuse fatty liver. (AR 402.) Her uterus and ovaries were not visible most probably secondary to prior surgery. (AR 402.)

Additionally, on July 29, 2013, Dr. Israel noted that review of the medical record showed no pathologic confirmation of endometriosis; and photos reveal a relatively clean pelvis with omentum adherent to the anterior abdominal wall. (AR 321.) Given that there is no clear anatomic etiology for Plaintiff's chronic pain, Dr. Israel opined they must consider a neuropathic

etiology. (AR 321.)

On November 7, 2013, Dr. Ozel examined Plaintiff and his findings show a normal abdominal examination, with a little tenderness laterally to the urethra. (AR 383.) Plaintiff's vagina was well supported with tenderness over the urethra and periurethral tissues. (AR 383.) Her levatro ani muscles were appropriately relaxed and muscle strength was decreased at 2/5. (AR 383.) There were no masses palpable at the vaginal cuff. Plaintiff's bladder was not distended and was nontender. (AR 383.) Dr. Ozel opined that it was unlikely that a small amount of mesh left in the pelvis would cause any significant problem. (AR 383-384.) On this same date, Dr. Lascano stated that Plaintiff's pain is intermittent and recurrent. (AR 432.) Most of the time it is constant, but at times can be incapacitating. (AR 432.)

Substantial evidence supports the ALJ's finding that Plaintiff's medical record does not show significantly abnormal findings on examination or test results to support Plaintiff's allegations regarding the severity of her pain. However, the ALJ cannot discredit Plaintiff's pain testimony solely because it is found not to be supported by the objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991).

2.      Lack of Compliance with Medical Treatment

The ALJ rejected Plaintiff's testimony on the basis that she had not always been compliant with recommended medical treatment. (AR 25.) The ALJ may consider an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment in determining the claimant's credibility. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ generally referenced the medical record without pinpointing any specific record. Upon review, the only failure to comply with treatment appears to be a notation in Dr. Ozel's report that Plaintiff took nortrptyline for three months and noted no improvement in her symptoms. (AR 382, duplicated at AR 454.) She discontinued the medication when it ran out. (AR 382.) Where a claimant provides good reasons for not taking medication for her symptoms, the failure to take the medication cannot be used to reject her symptom testimony. Smolen, 80 F.3d at 1284. Plaintiff's failure to renew the medication after using it for three months and

finding that it did not improve her symptoms is not a valid reason to discredit Plaintiff's credibility. There is not substantial evidence to support the finding that Plaintiff has not been compliant with recommended treatment.

3. Daily Activities

The ALJ also found that Plaintiff described a fairly active life that includes being a caregiver for her child, driving a car, shopping for groceries, cleaning her home in five to ten minute increments, walking inside stores while shopping, travelling to Los Angeles, visiting with friends, and playing computer games on her iPad. (AR 25.) There are two ways for an ALJ to "use daily activities to form the basis of an adverse credibility determination: if the claimant's activity contradicts his testimony or if the claimant's activity meets the threshold for transferable work skills." Phillips v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014).

The ALJ relied on Plaintiff's activities described in an exertion questionnaire on May 23, 2012, in which Plaintiff stated that she cleaned the house, took care of her children, went to the grocery store twice a month, and drives her children to school. (AR 25, 233-234.) At the January 16, 2014 hearing, Plaintiff stated that her health has gotten worse since 2012 when she stopped working. (AR 56.) When asked by the ALJ if she had engaged in these activities since 2012, Plaintiff responded that she had not. (AR 60-63.) Although Plaintiff is the primary caretaker for her disabled son, she stated that she rests as much as she can during the day and tries not to do anything that she does not have to. (AR 60.) Plaintiff stated that she is paid for taking care of her son for three hours per day. (AR 51.) She prepares his meals, which are mostly microwavable meals, washes his face, makes his bed, and gives him sponge baths. (AR 51.) Plaintiff spends thirty minutes in the morning taking care of her son. (AR 66.) Then she will spend an hour preparing his meal. (AR 66.) She stands to microwave his food and then can sit while she feeds him. (AR 66.) Then she uses the remaining hour and one half to get him ready for bed. (AR 66.)

While Plaintiff is able to drive she stated that she drives very seldom. (AR 62.) She did go to USC twice in 2013 for medical appointments and was driven by her sister. (AR 61.) Plaintiff plays on her iPad for about half an hour during the night when she is unable to sleep due

to pain. (AR 62.) While the ALJ asked Plaintiff specifically if she performed certain activities, the Court notes that the ALJ never inquired of Plaintiff what she did during the day. Plaintiff testified that she rests for four to six hours per day and spends three hours caring for her son. The Court finds that substantial evidence does not support the ALJ's finding that Plaintiff described a fairly active life.

### 4. Inconsistent Statements

The ALJ also found that Plaintiff made inconsistent statements. (AR 25.) A claimant's inconsistent statements can contribute to an adverse credibility finding. Robbins, 466 F.3d at 884. Here, the ALJ identified two statements which were found to be inconsistent.

First, the ALJ noted that Plaintiff alleged a loss of appetite and weight change, but the record shows that Plaintiff's weight has been consistent at 183 pounds. (AR 25.) However, the record demonstrates that Plaintiff's weight has fluctuated between 176 to 183 pounds over the four year medical record. (AR 269, 270, 271, 275, 276, 280, 305, 306, 310, 311, 312, 316, 381, 387, 388, 389, 390, 442, 443.) Substantial evidence does not support the finding that Plaintiff's weight has been consistent at 183 pounds.

Second, the ALJ stated that Plaintiff testified that she has been unable to work for the past three years, but she alleged a disability onset date of February 21, 2012. (AR 25.) In filing her application, Plaintiff stated that she stopped working due to her condition on February 21, 2012. (AR 215.) While Plaintiff testified that she probably became unable to work about three years prior to the hearing (AR 56), she testified that she did not go permanent with Kaiser because she became ill. (AR 55.) She has not looked for any work since February of 2012. (AR 55.) The Court does not find this statement to be so inconsistent that it would constitute substantial evidence to support the adverse credibility finding.

While the Court does note inconsistent statements based on Plaintiff's assertions that she has not done household chores, took care of her children, or shopped for groceries, and has only driven very seldom since February 2012 (AR 60-62) based on the exertion questionnaire that Plaintiff completed on May 23, 2012 (AR 233-235), the ALJ did not cite this as a reason for the adverse credibility finding.

5.      The ALJ Did Not Provide Clear and Convincing Reasons for the Adverse Credibility Determination

Based on the foregoing, the Court finds that the ALJ did not provide clear and convincing reasons, supported by substantial evidence in the record, to find that Plaintiff's symptom testimony was not credible.  On remand, the ALJ should reconsider the credibility finding.

**B.      Physician Opinion**

Plaintiff also challenges the weight given to the opinions of her treating physicians, Dr. Park and Dr. Lascano.  The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict.  Andrews, 53 F.3d at 1041.  The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The opinions of Drs. Park and Lascano are contradicted by the opinions of Drs. Frye and Frankel.  (AR 81-121.)  Further, Dr. Park and Dr. Lazano's opinions regarding Plaintiff's functional capacity are contradictory.  Therefore, the ALJ needed to provide legitimate and

specific reasons to reject the treating physicians' opinions and is to resolve any conflicts in the testimony.

1.   Dr. Park

Plaintiff contends that the ALJ erred by finding that the basis for Dr. Park's opinion regarding the extreme limitations imposed was vague and if it was vague than the ALJ was required to further development the record.  Defendant argues that the ALJ properly provided little weight to Dr. Park's statements in his August 2012 letter because the opinion that Plaintiff was unable to sit or stand for long periods of time and that she had difficulties walking, bending and working did not provide specific information useful to the RFC assessment.  Defendant also counters that the ALJ properly found that Dr. Park's 2014 Physical Capacities Evaluation lacked support.

The ALJ rejected a letter in the record dated August 2012 from Dr. Park.  (AR 26.)  The letter stated:

> To whom may concern,
>
> This letter is to inform you that my patient named above has been under my care for the following medical conditions:
>
> -Chronic Pelvic pain and inflammation
> -Urinary Stress Incontinence
> -Chronic Vaginal Pain
> -Irregular Vaginal Bleeding
>
> These conditions have caused my patient difficulties to manage her daily routine on a daily basis. She is unable to sit or stand for long period of time, she constantly is complaining of severe pain that causing difficulties to walk or bend which makes it very hard to function and to carry out her job duties at her employment. At this time my patient is waiting/pending two more medical surgical procedures. She has already underwent several surgical procedures.

(AR 303.)

The ALJ found that this was vague because Dr. Park did not indicate how long he thought Plaintiff could stand or sit and did not say whether he thought that she was limited in walking or bending, therefore, this was not useful in determining Plaintiff's functional limitations.  (AR 26.)  Because Dr. Park did not set forth any specific limitations, the ALJ could properly determine that the lack of any specific limitations did not assist in determining

Plaintiff's functional capacity.

The ALJ also addressed Dr. Park's January 14, 2014 opinion and found that the basis for the extreme limitations was vague and the opinion appeared to be based on Plaintiff's subjective complaints and was not supported by the medical record or the evidence of Plaintiff's daily activities. (AR 26, 435-438.) Dr. Park indicated that Plaintiff's symptoms consisted of pain, nausea, fatigue, vomiting, irregular bleeding, constipation, mood swings, and hot flashes. (AR 435.) He stated that Plaintiff symptoms associated with her impairments would be severe enough to constantly interfere with her attention and concentration required to perform simple work-related tasks. (AR 435.) Dr. Park opined that Plaintiff could sit for less than 30 minutes, could not stand for more than 15 minutes, and could walk for 1 hour. (AR 436.) Plaintiff needed to constantly keep moving to adjust posture. (AR 436.) Plaintiff had limitations in reaching, handling, and fingering and could only perform these actions less than 5% each in an 8 hour work day. (AR 436.) Plaintiff was unable to use her feet for repetitive movements. (AR 436.) She could use her right, left, or both feet for less than 15 minutes in an 8 hour work day. (AR 436.) Plaintiff could never lift or carry any weight. (AR 437.) Plaintiff was able to occasionally bend but could never squat, crawl, climb, or reach above shoulder level. (AR 437.) Plaintiff did not have any limitations in being exposed to unprotected heights, being around moving machinery, or exposure to changes in temperature and humidity or exposure to dust, fumes and gases. (AR 437.) Plaintiff had mild restricting in driving automotive equipment. (AR 437.) Plaintiff could need unscheduled breaks in an eight hour work day due to chronic pain. (AR 438.) Plaintiff's impairments would not cause good and bad days. (AR 438.) Plaintiff is unable to work. (AR 438.)

As to the Dr. Park's opinion that Plaintiff is unable to work, "[t]he treating physician's opinion is not, however, necessarily conclusive as to either physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). While the ALJ is not bound by the treating physician's opinion on disability, to reject an uncontroverted opinion the ALJ must provide clear and convincing reasons, and if the opinion is controverted the reasons must be specific and legitimate. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

The ALJ noted that despite finding Plaintiff had severe limitations, Dr. Park opined that Plaintiff had no restrictions in exposure to unprotected heights; being around moving machinery; exposure to dust, fumes and gases; and exposure to marked changes in temperature and humidity. (AR 25-26, 435-436.) Dr. Park opined that Plaintiff would be constantly impaired in attention and concentration; could sit for less than 30 minutes; stand for only 15 minutes; walk for 1 hour; can occasionally bend but never squat, crawl, climb, or reach above shoulder level. (AR 435-437.) Yet, Dr. Park opined that Plaintiff had no restrictions in exposure to unprotected heights; being around moving machinery; exposure to dust, fumes and gases; and exposure to marked changes in temperature and humidity. (AR 435-436.) Plaintiff cannot use her feet for repetitive movements for 15 minutes yet she is able to walk for an hour. (AR 436.) The ALJ properly considered that Dr. Park's opinion was internally inconsistent. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999).

The ALJ also found that the opinion was not supported by the objective medical evidence and was vague as to the basis for the extreme limitations. (AR 26.) Dr. Park stated that Plaintiff's diagnosis was chronic vaginal pain, pelvic, pain and lower back pain. (AR 450.) However, Dr. Park did not provide any diagnosis as to the reasons for Plaintiff's pain. Her symptoms included pain, nausea, fatigue, vomiting, irregular bleeding, constipation, mood swings, and hot flashes. (AR 450.)

While Plaintiff argues that the ALJ had a duty to develop the record if the opinion was vague, the ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1150. In this instance, the ALJ did not find the evidence inadequate or ambiguous, but found that Dr. Park had not adequately stated the basis for the extreme limitations he opined.

Plaintiff argues that the record demonstrates that Plaintiff consistently complained of severe pain at office visits. Review of the record demonstrates some objective findings. (AR 269, 270, 275, 280, 283, 305, 306, 311, 316, 387, 389, 390.) However, the record also reflects no examination or a normal examination by Dr. Park. (AR 270, 271, 275, 276, 280, 282, 306,

310, 312, 381, 388, 390.)  Further, as discussed above, Plaintiff's colonoscopy, endoscopy, MRIs, CTs, and x-rays were generally unremarkable.  (AR 288-290, 304, 324, 333, 337-338, 393, 394, 401-402, 403, 404, 448-449.)

Dr. Park also opined that Plaintiff was restricted in reaching, handling, and fingering and was able to perform less than 5% each in an 8 hour workday.  (AR 436.)  Dr. Parks' medical records are devoid of any findings to support such limitations.  The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.  Thomas, 278 F.3d at 957.

The ALJ also found that Dr. Park's opinion was not supported by Plaintiff's daily activities.  (AR 26.)  While Dr. Park opined that Plaintiff was unable to lift or carry any weight at all (AR 452), Plaintiff testified that she was able to lift five to ten pounds (AR 59.)  Also, Plaintiff's ability to be the primary care provider for her disabled son contradicts the severe limitations opined by Dr. Park.  Plaintiff testified that she prepares his meals by microwaving them and then taking them into the bedroom where she sits on the bed to feed him.  (AR 66.)  Additionally, Plaintiff bathes her disabled son, although he does not get in the bathtub, but receives sponge baths. (AR 51.)  She changes his bed.  (AR 51.)  Plaintiff spends thirty minutes in the morning getting her son ready.  (AR 66.)  When he returns home she spends another twenty to thirty minutes caring for him.  (AR 66.)  Then in the evening she spends an hour preparing his meal and feeding him and then gets him ready for bed.  (AR 66.)  While Plaintiff testified to very limited daily activities, they were inconsistent with the extreme limitations opined by Dr. Park.

Finally, Dr. Park opined that Plaintiff's symptoms associated with her impairments would be severe enough to constantly interfere with her attention and concentration required to perform simple work-related tasks (AR 435), but when Plaintiff is unable to sleep due to pain she plays video games on her iPad for a half an hour (62, 66).  Plaintiff's ability to concentrate on video games during times when she is in too pain to sleep is inconsistent with Dr. Park's finding that her symptoms constantly interfere with her attention and concentration..

The ALJ provided legitimate and specific reasons that are supported by substantial

evidence in the record to reject the opinion of Dr. Park.

2.   Dr. Lascano

The ALJ provided more weight to the November 2013 opinion of Dr. Lascano because it was more consistent with the medical evidence and Plaintiff's daily activities.  (AR 26.)  Dr. Lascano opined that Plaintiff could sit, stand or walk 4 hours each out of an 8-hour workday; she has no problems using her feet for operating foot controls; she could frequently lift and carry 0-20 pounds; and she can do occasional bending, squatting, crouching, crawling and reaching above shoulder level.  (AR 26, 432.)  Dr. Lascano opined that Plaintiff had no fingering, reaching, or handling limitations and was able to use her feet for repetitive movements.  (AR 432.)

However, Dr. Lascano also opined that Plaintiff's symptoms would frequently impair the attention and concentration needed to perform simple work related task and she would likely miss four or more days per month due to her treatment or impairments.  (AR 431, 434.)  The ALJ did not address these limitations in her opinion.  Upon remand, the ALJ should address the opinion of Dr. Lascano including the findings that Plaintiff would be limited in attention and concentration and that she would be likely to miss work due to her treatment or impairments.

C.    Step Four Findings

Plaintiff argues that the ALJ erred at step four in finding that Plaintiff was able to perform her past relevant work because the hypotheticals presented to the VE addressed an individual who could stand, sit, or walk 6 hours in an 8 hour workday and the ALJ found that Plaintiff could stand, sit, or walk 4 hours in an 8 hour workday.  Defendant responds that the ALJ does not need to rely on VE testimony to find that Plaintiff can perform her past relevant work.  Defendant contends that based upon the VE's testimony, the ALJ could reasonably conclude that Plaintiff could perform her past relevant work.

"Under [20 C.F.R. § 404.1520(e) and 416.920(e)] of the regulations, a claimant will be found to be 'not disabled' when it is determined that he or she retains the RFC to perform: 1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the

national economy." Titles II and XVI: Past Relevant Work — The Particular Job or the Occupation as Generally Performed, SSR 82-61 (S.S.A. 1982); see also Pinto v. Massanari, 249 F.3d 840, 845 n.3 (9th Cir.2001) (recognizing Social Security Rulings are "binding on all components of the Social Security Administration"). While the burden claimant has the burden of proof at step four, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto, 249 F.3d at 844. This requires the ALJ to carefully consider "the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her [past relevant work] to determine whether the individual can still do that work." Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen., SSR 82-62 (S.S.A. 1982).

The DOT description for security guard states:

> Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

372.667-034 GUARD, SECURITY, DICOT 372.667-034.

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of [past relevant work] will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work).

SSR 82-62.

The ALJ determined that Plaintiff was able to perform her past relevant work as a security guard as well as other jobs that exist in the economy. (AR 27.) At step four the claimant has the burden of demonstrating that she is incapable of performing her past relevant work. Reddick, 157 F.3d at 721. The ALJ premised her decision in part on the opinion of Dr. Lascano who opined that Plaintiff was able to sit, stand, and walk 4 hours each in 8 hour workday. (AR 432.) Plaintiff had no reaching, fingering, or handling limitations and was able to use feet for repetitive movements. (AR 432.) Dr. Lascano opined that Plaintiff could frequently lift and carry 20 pounds, and never lift or carry over 20 pounds. (AR 433.) She could occasionally bend, squat, crawl, climb, and reach above shoulder level. (AR 433.) Plaintiff had moderate restrictions to exposure to unprotected heights and exposure to dust, fumes, and gases; could never be around moving machinery or exposed to marked changes in temperatures; and had mild restrictions in driving automotive equipment. (AR 434.) Plaintiff would need unscheduled breaks during an 8 hour workday. (AR 434.) However, the ALJ did not address that Dr. Lascano found Plaintiff's symptoms would frequently impair the attention and concentration required to perform simple and repetitive tasks or that she would be likely to miss four days per month due to her impairments or symptoms. (AR 433, 434.)

Plaintiff testified that she worked full time as a security guard for about six months. (AR 54.) She was working at the airport, lifting the passenger's suitcases, which were about 70 pounds, on to the belt to scan them. (AR 55.) Since the residual functional capacity assessment provides that Plaintiff is only able to lift 10 pounds frequently and 20 pounds occasionally, Plaintiff is unable to perform her past relevant work as a security guard as it was actually performed.

Further, the ALJ only presented a hypothetical to the VE of an individual who could stand, sit, or walk six out of eight hours in a typical workday. Therefore, the VE was not presented with a hypothetical involving an individual with the limitations the ALJ found applicable to Plaintiff. In addressing the sit/stand option, the VE was asked about an individual who would be able to sit or stand each for about 15 to 30 minutes at a time. (AR 72.). The VE

1  stated that the security jobs would still be available but the number of jobs would be eroded due

2  to security jobs that require standing.  (AR 72.)  The ALJ stated that the person can sit more

3  easily than stand, and could sit for 30 minutes at a time and stand for two or three minutes and

4  then sit again.  (AR 72.)  The VE stated that many security positions involve working the front

5  desk of an office building which would involve sitting.  (AR 73.)  The VE opined that for the

6  security positions 50 to 60 percent of the positions would require an individual to stand.  (AR

7  73.)  However, this hypothetical would require that the person sit for more than four hours per

8  day.

9      The VE was asked how the regulations define light work.  (AR 79.)  The VE responded

10  that if a person might need to stand more than two hours in an eight-hour workday it would place

11  that person in the light category rather than the sedentary category.  (AR 80.)  The VE's

12  testimony was based upon an individual who was able to stand, sit, or walk six hours in an eight

13  hour day.  The DOT description itself appears to indicate that the individual would walk or stand

14  to a significant degree or sit most of the time.

15      The DOT description for security guard states:

16      Physical demand requirements are in excess of those for Sedentary Work.  Even
       though the weight lifted may be only a negligible amount, a job should be rated
17      Light Work: (1) when it requires walking or standing to a significant degree; or
       (2) when it requires sitting most of the time but entails pushing and/or pulling of
18      arm or leg controls; and/or (3) when the job requires working at a production rate
       pace entailing the constant pushing and/or pulling of materials even though the
19      weight of those materials is negligible.

20  372.667-034 GUARD, SECURITY, DICOT 372.667-034.

21      Based upon review of the DOT and the testimony that was presented at the January 14,

22  2014 hearing, the Court does not find substantial evidence to support the ALJ's finding that an

23  individual who is limited to Plaintiff's residual functional capacity as stated in the decision could

24  perform the job of security guard.

25      **D.    Step Five Findings**

26      The ALJ alternately found that there was other work that Plaintiff could perform in the

27  economy.  However, the VE was never presented with a hypothetical of an individual with

28  Plaintiff's residual functional capacity.  Therefore, there is not substantial evidence to support

the finding that Plaintiff was able to perform other work. The ALJ's finding that Plaintiff was able to perform other work in the economy is not supported by substantial evidence.

### E. Remand

The parties request that if the Court finds the ALJ erred that this action be remanded to the Commissioner for further consideration. The ordinary remand rule provides that when "the record before the agency does not support the agency action, ... the agency has not considered all relevant factors, or ... the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at 1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with or without* remanding the cause for a rehearing.' " Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (emphasis in original) (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is discretionary. Treichler, 775 F.3d at 1100. In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. Garrison, 759 F.3d at 1019.

The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020. The credit as true doctrine allows "flexibility" which "is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. Id. at 1021. Even when the circumstances are present to remand for benefits, "[t]he decision whether to remand a case for

additional evidence or simply to award benefits is in our discretion." <u>Treichler.</u> 775 F.3d at 1102 (quoting <u>Swenson v. Sullivan</u>, 876 F.2d 683, 689 (9th Cir. 1989)).

In this instance, the record is unclear as to what Plaintiff does during the day. However, Plaintiff is the primary caretaker seven days a week for her disabled 15 year old son who is unable to walk. Therefore, it is unclear whether Plaintiff has the residual functional capacity to work. The Court finds that the action should be remanded to the agency for further consideration regarding how Plaintiff's residual functional capacity affects her ability to perform work. Accordingly, this action shall be remanded for further consideration.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record.

Accordingly, IT IS HEREBY ORDERED that

1.     Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED IN PART AND DENIED IN PART;

2.     The Court REMANDS this action back to the Commissioner for further administrative proceedings consistent with this opinion;

3.     The Clerk of the Court is DIRECTED to enter judgment be entered favor of Plaintiff Joy Leon and against Defendant Commissioner of Social Security; and

4.     The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **April 26, 2017**

_____
UNITED STATES MAGISTRATE JUDGE